IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JEREMIAH CHAMBERLAIN, | ) | |
|     Plaintiff, | ) | Civil Case No. 7:20-cv-00045 |
| v. | ) | |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | By: Elizabeth K. Dillon |
| CORRECTIONS, *et al.*, | ) |     United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Jeremiah Chamberlain, a Virginia inmate proceeding *pro se*, brought this civil rights action against the Virginia Department of Corrections (VDOC), its director, Harold Clarke, and a number of other individual defendants. His amended complaint (Dkt. No. 27) alleges that he suffers from opioid use disorder (OUD) and that defendants deny him proper medications to treat OUD. He contends that denying such medications constitutes discrimination against prisoners like him suffering from OUD, results in unnecessary and painful opioid withdrawal, and leads to an increased risk of relapse and overdose death.[1]

Pending before the court is Chamberlain's motion for preliminary injunction (Dkt. No. 4), to which the defendants have responded. Defendants also filed a supplemental response, as directed (Dkt. Nos. 41, 42), and the court also has considered Chamberlain's reply (Dkt. No. 49). For the reason set forth herein, the court will deny his motion and also will deny related motions.

---

[1] Throughout his amended complaint and motion for preliminary injunction, Chamberlain purports to be seeking relief on behalf of other, similarly-situated inmates. The court has explained to Chamberlain that he may not assert claims on behalf of any other individuals and has expressly disallowed any such claims as part of his amended complaint. (Dkt. Nos. 13, 26.) Thus, the court treats his amended complaint as bringing claims only on his own behalf and his preliminary injunction as seeking relief only for himself.

I. BACKGROUND

**A.      Chamberlain's Amended Complaint**

Chamberlain's amended complaint (Dkt. No. 27) is lengthy and contains detailed background information about the opioid epidemic in the country and in Virginia, complete with citations to various secondary sources.[2] The amended complaint also discusses OUD and medication-assisted treatment (MAT), which Chamberlain describes as an "evidence-based standard of care for treatment of OUD." He states that MAT, "including buprenorphine and methadone, are lifesaving medications." (Am. Compl. ¶ 8.) According to Chamberlain, VDOC has a blanket policy prohibiting MAT except as to pregnant women or others within their authority, but housed outside of VDOC facilities (such as at local jails, halfway houses, and offenders on parole, probation, or supervision). (*Id.* ¶¶ 9, 112.) For inmates like him in VDOC facilities, VDOC will only provide "comfort" medicines that treat the symptoms of withdrawal, *e.g.*, vomiting, diarrhea, and pain, but will not provide MAT treatment for the underlying OUD.

Chamberlain's complaint also details his own history of addiction, beginning with heroin at age 14. (Am. Compl. ¶¶ 65–77.) He claims that his addiction led to all of the criminal behavior for which he has been imprisoned. While serving a prior criminal sentence, he continued to use opioids and, after he was released from VDOC custody on December 31, 2007, he was using heroin again within ten months.

In January 2011, he sought treatment as an outpatient for his addiction and was prescribed methadone. He claims that he was relieved of his opioid cravings, and his family described the difference as "night and day." (*Id.* ¶ 72.) In May 2011, facing minor misdemeanor

---

[2] Chamberlain explains that his "complaint was taken verbatim from a winning case filed by the ACLU," which was settled. (Reply 9, Dkt. No. 49.)

charges, Chamberlain began eluding the police, primarily because he wanted to avoid being incarcerated without bail and forced to withdraw from methadone. He says he tried to stop the use of the methadone with the help of family and friends, but "while in the throes of withdrawal" he grabbed his mother's firearm and confronted the police in an attempt at suicide. He was shot by the police and charged with attempted capital murder. (*Id.* ¶¶ 73–74.)

Thereafter, he received surgeries and was prescribed narcotic pain medications while in the jail for several years until June 2013, when he was transferred to a VDOC facility. He claims that because of his withdrawal symptoms, he continually sought illicit opioids while in prison and eventually got caught. He failed ten drug tests over a period of four years but was consistently told either that he was on the waiting list for drug treatment or that there were no programs available. He states that he "discovered in July 2019" that OUD was a protected condition and that treatment was "mandated, not optional." (*Id.* ¶ 77.)

Chamberlain's amended complaint contains four counts. In the first two, alleging that OUD is a disability, he claims that defendants' policies of denying MAT violate the ADA and Section 504 of the Rehabilitation Act. In count three, he contends that the denial of MAT constitutes deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Count four alleges that defendants' practice and policy of denying him MAT is a violation of his rights under the Equal Protection Clause of the Fourteenth Amendment. This claim appears to be based on an allegation that other inmates "under the authority of VDOC" including those in local jails, halfway houses, on parole, probation and supervision, are allowed or required to participate in MAT, but he is not.

**B.    Chamberlain's Motion for Preliminary Injunction**

In his motion for preliminary injunction, Chamberlain asks that the court direct VDOC to

give him the specific medications he argues are necessary for his treatment. He asks that the court issue an injunction ordering defendants to "initiate a treatment plan for Chamberlain . . . to be screened [and] evaluated by the facility physician or psychiatrist and be allowed to take any of the OUD medications." (Mot. Prelim. Inj. 7, Dkt. No. 4.) He further requests that if facility medical staff lacks the federal licensing requirements to prescribe those two medications, then the court should require defendants to obtain services from non-VDOC doctors with the necessary licensing to prescribe the medications. (*Id.*)

Additionally, in a document filed in late June 2020, Chamberlain states that he is giving "notice" to the court, defendants, and defense counsel, of an "impending and life-threatening danger." (Dkt. No. 39 at 2.) Specifically, he states that the modified lockdown imposed as a result of the current COVID-19 pandemic has "significantly impacted the inflow of opioids," forcing him into a "forced withdrawal." (*Id.*) He contends that this has resulted in a lower physical tolerance. He then states that when VDOC eventually returns to normal operation, "the sudden flood of opioids will return," and he will re-use them at his former doses, which his body can no longer tolerate. (*Id.*)[3] He believes these occurrences this will result in "state-wide overdose fatalities and associated injuries." (*Id.*)

In their response opposing the preliminary injunction, defendants have submitted affidavits from: (1) Dr. McDuffie, a contract psychiatrist who has treated Chamberlain; (2) A. David Robinson, Chief of Corrections Operations for the Virginia Department of Corrections; and (3) Dr. Hartka, who is the medication-assisted treatment coordinator for the reentry unit of VDOC.

---

[3] Chamberlain is effectively stating that he uses illegal opioids (including heroin) while in prison and that he needs MAT to stop him from illegally using those drugs when they become available again.

**C.     VDOC's MAT Programs Generally**

Chamberlain attempts to challenge the general adequacy of VDOC's drug treatment programs, claiming that they are inadequate and that more (or different) MAT should be available.[4]  For their part, defendants emphasize that all of VDOC's "in-custody intensive substance abuse treatment programs are consistent with the Federal Bureau of Justice Assistance standards as well as American Correctional Center standards."  (Robinson Aff. ¶ 4, Dkt. No. 36-1.)  Drs. McDuffie and Hartka both note that the two medications sought by Chamberlain—methadone and buprenorphine (also known under the brand name Suboxone) must be administered in accordance with federal guidelines and are not available in any VDOC facility.  (McDuffie Aff. ¶ 10, Dkt. No. 36-2; Hartka Aff. ¶ 5, Dkt. No. 36-3.)  VDOC has MAT pilot programs using a naltrexone injection (Vivitrol), and those pilot programs are offered as part of an intensive drug treatment program at Indian Creek Correctional Center.  That program is limited to certain security level offenders (Level 2 and below), however, and is offered only during the 18 to 24 months immediately prior to the offender's release.[5]  For participating offenders, the Vivitrol is given in a long-lasting injection one week prior to release and may continue for the first twelve months of supervision.  (Robinson Aff. ¶ 11; Hartka Aff. ¶¶ 4–5.)

---

[4] For support, Chamberlain points to other states that he alleges provide MAT to their prisoners, such as Rhode Island, Pennsylvania, Massachusetts, and Washington.  The court's own research has disclosed that at least some other prison systems, including the federal Bureau of Prisons (BOP), apparently do provide more extensive MAT options to offenders.  *Crews v. Sawyer*, No. 19-2541-JWB, 2020 WL 1528502 (D. Kan. Mar. 31, 2020) (explaining 2019 changes to the BOP's policies regarding drug addiction treatment, which included expanded use of MAT); *but see Advocating for Access: How the Eighth Amendment and the Americans with Disabilities Act Open a Pathway for Opioid-Addicted Inmates to Receive Medication-Assisted Treatment*, 29 Annals Health L. Advance Directive 231, 240 & n.63 (Fall 2020) (citing to a 2018 study showing that "[l]ess than one percent of the more than 5,000 prisons and jails in the United States allow access to MAT.") (citation omitted).

[5] Chamberlain is currently a security level 5 offender with an expected release date of 2047, so he does not meet either of those criteria.  He blames his high security level, however, on his untreated OUD:  "[T]he defendants' position is [that] Chamberlain can't participate in our drug treatments because his untreated drug addiction led him to receive infractions for positive drug tests."  (Reply 7.)

But the issue of whether VDOC could or should provide more robust MAT generally is not critical to the motion before the court, which requires a much more focused inquiry—whether Chamberlain can satisfy the standards for obtaining preliminary injunctive relief.

**D.     Chamberlain's Treatment While at VDOC**

Chamberlain alleges that he requested MAT treatment in July 2019 and that his requests "were answered with derision and disdain," although he does not say by whom. (Reply 4, Dkt. No. 49.) Shortly thereafter, Chamberlain was moved to Red Onion State Prison and placed in segregation while awaiting classification, where he suffered significant acute withdrawal symptoms. He first requested to see a psychiatrist at Red Onion in January 2020, and there had been no documented need for mental health treatment for him within the prior two years. (McDuffie Aff. ¶ 5.) At that time, he was prescribed Lithium and Thorazine for his posttraumatic stress disorder (PTSD) and borderline personality disorder. (*Id.* ¶ 6.) In February 2020, Chamberlain requested to live in a mental health pod and requested MAT for his opioid addiction.

According to Dr. McDuffie, he met with Chamberlain and discussed the naltrexone injection (Vivitrol), but it was never prescribed. Dr. McDuffie avers that he never informed Chamberlain that Vivitrol was unavailable or that Dr. McDuffie had requested it for Chamberlain and it had been denied due to cost. Chamberlain consented to and was prescribed the daily, oral version of naltrexone (known under the brand name ReVia), which is also a drug used to treat opioid addiction. The oral naltrexone has potential side effects that Chamberlain wanted to avoid; however, in Dr. McDuffie's medical opinion, the potential side effects did not present any excessive risks in comparison to the potential treatment benefit. After being prescribed the oral naltrexone, Chamberlain stopped taking the medication within a week, reporting that it made him

feel weak and amplified the chronic pain he reports having in his upper extremity. (*Id.* ¶ 8.) Additionally, Dr. McDuffie has offered his professional opinion as a psychiatrist that Chamberlain does not need the medications he requests—methadone or buprenorphine—to treat either his opioid addiction or his borderline personality disorder. (*Id.* ¶ 10.)

Chamberlain insists that the medication he is being prescribed is insufficient to manage his pain and that he needs one of the stronger medications to treat his opioid addiction. But it is significant both that he has refused to take the medication prescribed by Dr. McDuffie to treat his opioid addiction,[6] and that Dr. McDuffie has expressly stated that Chamberlain does not need the specific medications that he wants.

## II. DISCUSSION

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only "sparingly." *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008); *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. *Winter*, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345–46 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010).

---

[6] Dr. McDuffie avers that when Chamberlain consented to the oral naltrexone, he stated that he would not be able to sue the VDOC for refusing to treat him if he refused treatment. (McDuffie Aff. ¶ 8.)

Based on the allegations and information Chamberlain has presented, it is apparent that Chamberlain cannot satisfy the second *Winter* factor.[7] To do so, Chamberlain must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a clear showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *See DiBiase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (explaining that a "possibility" of irreparable harm is insufficient to satisfy the movant's burden).

Here, Dr. McDuffie states unequivocally that Chamberlain does not need the medications he requests, methadone or buprenorphine, to treat either his opioid addiction or his borderline personality disorder. (McDuffie Aff. ¶ 10.) He gives reasons for that opinion. (*Id.*) Dr. McDuffie also avers that Chamberlain has been treated and will continue to be monitored by both medical and psychiatric personnel and provided medications as deemed appropriate for his physical and mental health. (*Id.*) Chamberlain himself acknowledges that he is receiving treatment, although he alleges it is ineffective.

Chamberlain contends, in a motion for evidentiary hearing (Dkt. No. 46), that Dr. McDuffie's affidavit is "inaccurate" and "contradicts what McDuffie has told Chamberlain . . . and McDuffie's own medical notes." According to Chamberlain, the notes show that Dr. McDuffie "agreed with Chamberlain and strongly urged Chamberlain to have [McDuffie] subpoenaed to testify or to be deposed." (*Id.* at 2.) In his reply, Chamberlain says that Dr. McDuffie told him he was certified and willing to provide methadone and suboxone to Chamberlain "if VDOC would allow him to" do so. (Reply 7.) The only note Chamberlain

---

[7] The court has also considered the other three *Winter* factors. But because Chamberlain must establish all four *Winter* factors to obtain relief and because he cannot satisfy the second, it is not necessary to address the remaining factors.

references specifically is a May 8, 2020 note in which Dr. McDuffie wrote that Chamberlain "may be appropriate for a medication assisted program utilizing methadone or suboxone or abstinance [sic] treatment" for OUD, but notes that the program has to assess and accept offenders. (Dkt. No. 49-1 at 6.) Critically, that note references abstinence treatment as one of the program options, and Dr. McDuffie's sworn affidavit emphasizes that some offenders, including those with varying degrees of antisocial personalities, "are better heled with abstinence." (McDuffie Aff. ¶ 10.) He apparently agrees that Chamberlain falls in this category as he offers that, in his "professional opinion, Chamberlain does not need . . . methadone or buprenorphine for opioid dependence." (*Id.*)

Chamberlain presents no evidence—and certainly none from any of his medical providers—that suggests MAT (and specifically the two medicines he claims he should receive) is medically necessary *for him*, or that without the relief he seeks, he is likely to suffer irreparable harm. Similarly, although his preliminary injunction seeks "monitoring and treatment," he has not presented evidence that he is not receiving treatment from VDOC providers, including Dr. McDuffie. Without more, he simply cannot meet the high standard for entitlement to preliminary injunctive relief.[8]

Although the parties did not identify any factually similar cases, the court notes there are clear factual distinctions between this case and two cases where courts granted requests for preliminary injunctions for a prisoner to receive some type of MAT. First, in *Pesce v. Coppinger*, 355 F. Supp. 3d 35 (D. Mass. 2018), the court granted plaintiff's motion for

---

[8] In his reply, Chamberlain argues, for the first time, that he is at risk of violence from other offenders to whom he owes "drug debts," and that he has sought (and received) protective custody twice as a result. (Reply 10.) He does not provide much additional detail. In any event, not only was this argument not raised in his initial motion, but he admits that he has been granted protective custody when he sought it. Thus, these vague allegations do not show a that Chamberlain faces "actual or imminent" irreparable harm. *See DiBiase*, 872 F.3d at 230.

preliminary injunction to be continued on methadone. There, however, the plaintiff—who was anticipating being incarcerated—had an outside physician's prescription to receive methadone. The prison, without making an individualized assessment of the plaintiff's need for that treatment, simply relied on a blanket policy of not allowing such treatment. Because the defendants' course of treatment ignored and contradicted his physician's instructions, the court concluded that plaintiff had established a likelihood of success as to his Eighth Amendment claim, and the court concluded that the other *Winter* factors favored granting the injunction, as well. *Id.* at 48–49.

Similarly, in *Smith v. Aroostook Cty.*, 376 F. Supp. 3d 146 (D. Me. 2019), *aff'd*, 922 F.3d 41 (1st Cir. 2019), the court granted preliminary injunctive relief requiring that a prospective inmate currently receiving MAT continue to receive that treatment while incarcerated. Again, though, that prospective inmate was not yet in jail and the court credited the inmate's own physician, who expressed grave concern that forced and immediate withdrawal would cause her "painful symptoms and increase her risk of relapse, overdose and death." *Smith*, 922 F.3d at 42 (summarizing testimony). Moreover, her sentence was a short one—she would spend forty days in jail—and her physician "opine[d] without serious contradiction that . . . her medication [was] necessary to her continued health." *Id.*

By contrast, Chamberlain has been incarcerated for years without MAT, and his current estimated release date is in 2047, more than twenty-five years away, so his situation is factually distinguishable from both of the above cases. Most significantly, though—and unlike the plaintiffs in these other cases—Chamberlain has not presented any medical testimony to support his assertion that he needs MAT to treat his OUD. Indeed, in granting relief, the *Pesce* court specifically distinguished cases where prisons appropriately had denied similar treatment based

10

on individualized assessments of the inmate's medical needs. 355 F. Supp. 3d at 47–48. Chamberlain's request for injunctive relief is akin to those cases. An individualized assessment has been made, but Chamberlain has failed to show that the treatment he wants is medically necessary for him.

To summarize, then, Chamberlain is under the care of a physician, has been receiving routine medical treatment and monitoring, and the injunctive relief he requests is medically unnecessary, according to his treating physician. Accordingly, the likelihood of Chamberlain suffering irreparable harm without the relief he demands is not "actual or imminent," so as to make the "clear showing" required for the second *Winter* factor.

## III. CONCLUSION

For the reasons discussed above, Chamberlain's motion for preliminary injunction (Dkt. No. 4) will be denied. Additionally, the court will deny as moot his motion for evidentiary hearing, (Dkt. 46), and will deny without prejudice his motion requesting a referral to alternative dispute resolution (Dkt. No. 47). An appropriate order will be entered.

Entered: September 28, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge